IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| FE WEAR, widow of RICKY WEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:06-cv-244 |
| | ) | (VARLAN/SHIRLEY) |
| TRANSAMERICA LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This is an action to recover $100,000 in life insurance proceeds under a group term life insurance policy offered by defendant Transamerica Life Insurance Company[1] (Transamerica) to employees at Carlex Glass Company (Carlex). Plaintiff, Fe Wear, a Carlex employee, originally filed this action on May 25, 2006, in the Circuit Court for Monroe County, Tennessee, seeking those policy limits after her husband, Ricky Wear, died from a shotgun blast to the chest during an altercation on September 24, 2004 [*see* Doc. 1-2, pp.4-7]. Plaintiff also seeks $25,000 as a bad faith penalty pursuant to Tenn. Code Ann. § 56-7-105.

On June 27, 2006, Transamerica timely removed the action to this Court, *see* 28 U.S.C. § 1446(b), alleging federal question jurisdiction, *see* 28 U.S.C. § 1331, based on the

---

[1]At the time of the events at issue, the defendant employed the nomenclature "Transamerica Assurance Company"; however, that entity was merged into Transamerica Life Insurance Company on October 1, 2004 [*see* Doc. 1-2, p.10].

Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, as well as jurisdiction based on diversity of citizenship of the parties[2] and the amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a)(1). On July 17, 2006, Transamerica filed its answer, denying any and all liability to plaintiff [*see* Doc. 3]. This matter is currently set for a bench trial on August 21, 2007 [*see* Doc. 8, p.5] and is presently before the Court on the following motions by Transamerica:

1. Motion for summary judgment [Doc. 14] based on the fact that (a) Transamerica declined coverage because the spouse of a non-participating employee was not entitled to coverage; and (b) plaintiff made certain misrepresentations on the application about her husband's medical record which increased Transamerica's risk of loss; and

2. Motion to dismiss [Doc. 18] for plaintiff's failure to prosecute and, in particular, to comply with certain facets of the Court's scheduling order [Doc. 8] filed on December 19, 2006.

With respect to the pending motion for summary judgment, the record reflects that Transamerica has filed a thorough brief in support of its motion [*see* Doc. 15], and that the plaintiff has filed a response to that motion [*see* Doc. 16]. Moreover, Transamerica has filed an outstanding reply to plaintiff's response [*see* Doc. 17]. Nevertheless, in reviewing these briefs, the Court has identified two issues, one legal and one factual, which need further development before this matter can be adjudicated.[3]

---

[2] Plaintiff is a citizen of the State of Tennessee, and defendant is "a foreign corporation located in Cedar Rapids, Iowa, doing business in the State of Tennessee." [*See* Doc. 1, p.3].

[3] The Court will stay ruling on defendant's motion to dismiss at this time. Obviously, if the Court were to grant defendant's motion for summary judgment, the motion to dismiss would be moot. If the Court rules otherwise, then the merits of that motion will be addressed at the appropriate time, hopefully with the benefit of a response by plaintiff.

I.

First, the Court observes that Transamerica primarily relies on Tennessee law to support its position that Ms. Wear's misrepresentations on the insurance application substantially increased its risk of loss and therefore allows Transamerica to refuse to pay her claim. Remarkably, plaintiff has cited no cases whatsoever in support of her position, nor has she made any effort to analyze or distinguish the cases relied on by Transamerica in its briefs. Plaintiff has made factual arguments only.[4] The initial dilemma for the Court, however, is whether the facts of this case are governed by Tennessee law or by federal ERISA law.

It is well established that if jurisdiction in this case were purely predicated on diversity of citizenship, this Court must apply state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under the *Erie* doctrine, a federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941); *Tele-Save Merchandising Co. v. Consumers Distributing Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987). Moreover, the insurance contract at issue apparently does not contain any enforceable choice of law provision. Consequently, in resolving contractual disputes in such a situation, Tennessee adheres to the rule of *lex loci contractus*. *See Starr Printing Co.,*

---

[4]One argument articulated by plaintiff must be addressed at this time, however. Plaintiff takes the position that Transamerica's motion for summary judgment is "premature." [Doc. 16, p.1]. Given the fact that discovery is now closed in this case pursuant to this Court's Scheduling Order [*see* Doc. 8, p.3], and given the fact that Transamerica was required to file this dispositive motion at least 120 days before trial pursuant to that same Order [*see id.*, p.4], Transamerica's motion is anything but premature.

3

*Inc. v. Air Jamaica*, 45 F. Supp. 2d. 615, 629 (W.D. Tenn. 1999) (applying Tennessee law). Therefore, when the contract involves questions concerning the validity of a contract, the court applies the laws of the state where the contract was made. *See Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). In this case, it appears that this contract was entered into in the State of Tennessee; thus, Tennessee law should be applied to the breach of contract issue, assuming, once again, that this is a case based purely on diversity of citizenship.

However, Transamerica also removed the case to this Court based on ERISA. ERISA's preemption clause states that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has interpreted this clause to preempt state-law causes of action that would allow employee benefit plans to "obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Such an interpretation is necessary, the Court has instructed, to give effect to Congress's intent "that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Id.* at 52. Moreover, the Sixth Circuit has recognized the broad sweep of ERISA preemption provision in relation to state-law causes of action based upon an improper denial of benefits, "noting that 'virtually all state law claims relating to an employee benefit plan are preempted

4

by ERISA.'" *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)).[5]

If, in fact, this case is preempted by ERISA, the next legal issue for consideration by the Court is whether Transamerica's denial of coverage to plaintiff should be analyzed under a traditional summary judgment approach or whether the issue should be analyzed under ERISA, in particular, 29 U.S.C. § 1132(a)(1)(B), which provides as follows:

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his Plan, to enforce his rights under the terms of the Plan, or to clarify his rights to further benefits under the terms of the Plan.

In *Wilkins v. Baptist Healthcare Systems*, 150 F.3d 609, 617-20 (6th Cir. 1998), the Sixth Circuit established guidelines under which district courts must adjudicate ERISA cases brought before them for judicial review. The Sixth Circuit explained that using summary judgment as a tool for adjudication of ERISA cases does not properly comport with the purpose of summary judgment. *Id.* at 619. Because the role of a district court in ERISA matters is not to determine whether issues of fact exist for trial, but to review the administrative record before it, district courts should more properly characterize their role in such proceedings as encompassing elements of both bench trials and summary judgments. *Id.* at 619-20. Following these guidelines, the district court proceeds by making

---

[5] Obviously, if ERISA preempts plaintiff's state law causes of action, it naturally follows, for that reason alone, that plaintiff has no cause of action for a bad faith penalty pursuant to Tenn. Code Ann. § 56-7-105. *See Pilot Life Ins. Co.*, 481 U.S. at 57 (state-law bad-faith claim preempted).

5

adjudications on both fact and law as would occur in a bench trial while handling the manner in an expedited fashion resembling summary judgment. *Id.*

Furthermore, *Wilkins*, following Supreme Court precedent, dictates this Court's standard of review in ERISA matters. Under *Wilkins*, this Court has two possible standards of review. If the trustees of an employee benefit plan do not have discretion to determine eligibility for benefits or construe the terms of the Plan, this Court is required to undertake a *de novo* review of the administrator's decision. *Id.* at 613. However, where a benefits plan vests discretion with the administrators, this Court may only disturb the administrator's decision if it finds the basis of such a decision to be arbitrary and capricious. *Id.* at 616 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Regardless of the standard of review applied to the administrator's decision, "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to a consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)).

Here, the Plan states in pertinent part as follows:

We are the fiduciary under the plan designated to review any claim appeals with respect to the policy by the claimant. We are vested with discretionary authority to determine eligibility for benefits and to construe and interpret the plan/policy terms and provisions. Our decision with respect to eligibility and plan/policy terms and provisions is final, conclusive and binding as to all parties.

6

[*See* Doc. 1-2, p.19]. Based on this language, it would appear that the appropriate standard of judicial review in this case would be the arbitrary and capricious standard. Nevertheless, the Court is reluctant to so hold without any briefing by the parties. Moreover, this standard would only be utilized if the facts of this case are not analyzed under a traditional summary judgment standard which issue, as previously noted, also requires further briefing by the parties.

Finally, with respect to the legal issues now identified in this case, the Court observes that even if this case is governed by ERISA, this Court must apply federal common law rules of contract interpretation in making a determination. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (citation omitted). Furthermore, in developing federal common law rules of contract interpretation, the courts take direction from both state law and general contract law principles. *Id.* (citation omitted). Thus, this Court will most likely be guided by Tennessee cases to some extent, regardless of whether it employs a traditional summary judgment analysis or an ERISA analysis or both, in determining the merits of Transamerica's pending motion for summary judgment.

## II.

Second, as to a potential fact issue, this Court observes that, in reviewing the documents submitted by plaintiff, as is required if these records are part of the "administrative record" in an ERISA case, the legal significance of the following e-mail has not been addressed by the parties:

> Arlene - Per my voice mail - Transamerica will issue the policy on Ricky Wear, BUT they must have the refund checks returned. To issue the policy, the premium must be applied to it to make it active from the original date. Please send the check (or checks) directly to Mary Wagner. Her PO Box is listed below. If sending to her PO Box, please be sure to mark the envelope - "Personal & Confidential". If you would like to overnight it, the physical address is:
>
> Mary Wagner - VP of New Business
> Transamerica Life Insurance Company
> 1400 Center View Drive
> Little Rock AR 72211
>
> Once the policy is issued, Fe will need to go through the normal claims processing procedures by calling Transamerica and speaking with claims directly. Mary will alert the claims manager regarding this situation.

[*See* Doc. 16-3, p.27]. Significantly, this e-mail was sent on February 23, 2005, after Transamerica had declined to pay Ms. Wear on the policy, but after she had retained counsel to represent her in this matter and after counsel had sent correspondence to Transamerica [*id.*; *see also* Doc. 16-3, pp.24-25]. It may very well be that this e-mail, as well as others about this same time and related to the same subject matter, might be developed into a theory of recovery by plaintiff. However, plaintiff has not pursued any theory from these facts and, based on the present record and the lack of briefing on this issue, it is difficult, if not impossible, to ascertain whether these facts contribute to any sort of viable theory.

III.

In view of the above, it is hereby ORDERED as follows:

1. The August 21, 2007, trial date is CANCELLED;

2. The parties are DIRECTED to file supplemental briefs regarding the above issues on or before **September 28, 2007**; and

8

3. The parties will then have up to and including **October 15, 2007**, within which to file any reply to the parties' initial supplemental briefs.

The Court will set a new trial date, if necessary, after adjudication of defendant's pending motion for summary judgment.

**E N T E R :**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE